IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CHRISTOPHER BAYSMORE                    :

                                              :

    v.                                  : Civil Action No. DKC 2006-0218

                                              :

POTOMAC ELECTRIC POWER
  COMPANY, *et al.*[1]                    :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this employment discrimination and retaliation case is the motion of Defendants Potomac Electric Power Company (Pepco) and Pepco Holdings Incorporated (PHI) for summary judgment. (Paper 18). The issues are briefed fully and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, Defendants' motion for summary judgment will be granted.

**I.   Background**

The following facts are based on Plaintiff's complaint and the evidence submitted by the parties with respect to Defendants' motion for summary judgment. The facts are undisputed except as

---

[1] As addressed more fully below, the caption of Plaintiff's complaint combines the names of two business entities, Pepco and its parent PHI, in identifying the Defendant. The caption of Plaintiff's complaint identifies the Defendant in this action as "PHI Pepco Power Delivery." (Paper 1, at 1). Defendants suggest that the proper party in interest is Pepco, and note that its parent PHI may also be reasonably included in the name used in Plaintiff's complaint. (Paper 6, at 2 n.1). This notice will be interpreted as a motion to substitute the real parties in interest, which will be granted. For the reasons set forth below, summary judgment in favor of both entities is proper.

noted, and, where disputed, are presented in the light most favorable to Plaintiff. Plaintiff Christopher Baysmore, an African American, was a substation technician trainee level III at Pepco when it terminated his employment on November 11, 2004. Plaintiff was originally hired by Pepco in November 2000 as a substation technician trainee level I. He was twice promoted, to the level II position in May 2001, and later to the level III position he held at the time of his termination. Plaintiff initiated an internal complaint at Pepco alleging race discrimination sometime between November 2003 and February 2004. In this complaint, Plaintiff alleged that he had been excluded from an employee incentive program that had paid a monetary award to a group of employees that had recommended the installation of long-lasting light bulbs at Pepco substations. Plaintiff submitted to Pepco's internal equal employment opportunity program a written complaint based on these allegations dated February 12, 2004. That office generated a report relating to Plaintiff's allegations on February 16, 2004. It presented Pepco's conclusion that Plaintiff was not eligible for the reward because he was not part of the team, whose membership was based primarily on seniority, and had not generated the efficiency-improvement idea that formed the basis for the team's monetary award. Pepco determined that Plaintiff's allegations of race discrimination were unfounded. Plaintiff's retaliation claim is based on having filed this internal complaint.

2

On September 1, 2004, Plaintiff was working at Pepco's substation number 211 with two other Pepco employees, Bernard Smith and Ronnell Wallace, when their supervisor, H.J. Taylor, arrived at the substation to perform an employee safety inspection pursuant to Pepco's written Employee Safety Inspection policy.  Mr. Taylor observed that Plaintiff, Mr. Smith, and Mr. Wallace appeared to be in the process of switching out a transformer and were not wearing fire-retardant coveralls or rubber gloves, personal protective equipment required by Pepco's employee safety policies.  When Mr. Taylor confronted Plaintiff with this allegation, Plaintiff indicated that the employees were not actively working on the transformer, but instead had stopped work on the transformer to discuss and plan their next actions.  Plaintiff told Mr. Taylor that under Pepco's policies, personal protective equipment was not required for such planning and discussion.  Plaintiff maintains that his explanation of this event was truthful. (Paper 20, at 2). Mr. Taylor completed a safety inspection form detailing his observations and his belief that Plaintiff had been engaged in switching out the transformer without using required personal protective equipment.

Pepco conducted a safety follow-up meeting regarding the safety inspection in October 2004.  Plaintiff attended this meeting, and had an opportunity to present his version of the event that occurred on September 1, 2004.  After this follow-up meeting,

3

another Pepco employee, C.A. Joseph, sent Plaintiff a memo, dated October 25, 2004, describing his determination regarding the safety inspection, and detailing a series of infractions that he noted could warrant termination of Plaintiff's employment.

> On the "A" shift Wednesday September 1, 2004, Mr. Taylor observed you switching a circuit at Twinbrook, Substation No. 211 without your required fire retardant coveralls. Furthermore, the high voltage gloves personally assigned to you and the high voltage gloves assigned to the vehicle were found locked in your assigned vehicle.
>
> . . . .
>
> . . . You responded that you were only in the process of walking out the circuit and that you were not required to have on fire retardant clothing to perform that task.
>
> You displayed a serious lack of candor in making this statement in an effort to convince Mr. Taylor that you were only in the process of walking out the circuit, when in fact, this was not true. After bringing this to your attention, you again tried to convince him that because you were overseeing the task being performed as part of your training and not actually performing the switching that you didn't need your fire retardant uniform even though you were within the 6 foot safe switching zone. Additionally, you left the substation without coming into compliance or completing the assigned task and without notifying the crew leader.
>
> In addition to the above described events, a review of your paperwork for Friday, September 17, 2004 and Friday September 23, 2004, indicates that you provided false and misleading information on your Daily Crew Time Reports (D.C.T.R.'s) and other Company documents.

> Given the seriousness of these offenses,
> it appears that discharge is warranted.  This
> is to advise you that we have scheduled a
> meeting to discuss your continued employment
> and would like you to attend.  The meeting
> will be on Wednesday, October 27, 2004 . . . .

(Paper 18, Ex. 6, at 1).  Plaintiff attended the October 27, 2004 meeting, and was informed on November 5, 2004 that his employment at Pepco was terminated.[2]

Plaintiff filed a Charge of Discrimination with the Equal Opportunity Employment Commission (EEOC) on February 12, 2005, alleging race discrimination and retaliation in connection with his discharge.  It lists the date of the discriminatory action as occurring on November 5, 2004, and contains the following allegations:

> I began my employment with the above named
> company on or about November 2, 1999.  Around
> November 2003, I filed an internal EEO
> complaint.  On or about November 5, 2004, I
> was discharged from my position as Substation
> Technician Level III.
>
> My employer stated I was discharged for
> unsafely switching and later for a discrepancy
> regarding my time sheet.  However, similarly
> situated White, non-protesting employees were
> treated more favorably than I.

_____

[2]   Plaintiff disputes that his time reports were false.  He submits a letter from a former co-worker, Oscar W. Gary, stating that Plaintiff explained to him that Plaintiff had worked in his truck before entering a substation door.  Plaintiff explained that this time explains the discrepancy between Plaintiff's time report and the security documents that indicate that Plaintiff actually entered the substation at a later time than he reported, which formed the basis for Pepco's conclusion that Plaintiff's time records were false.  (Paper 20, Ex. 4).

> I believe I was discharged because of my race
> (Black) and in retaliation for engaging in
> protected activity in violation of Title VII
> of the Civil Rights Act of 1964, as amended.

(Paper 18, Ex. 11, at 5).

Plaintiff initiated this action by filing a *pro se* complaint under Title VII, 42 U.S.C. § 2000, *et seq.*, in this court on January 25, 2006.  The complaint asserts discrimination and retaliation in connection with Pepco's decision to terminate Plaintiff's employment.

## II.  Standard of Review

It is well established that a motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate.  *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1979).  The moving party bears the burden of showing that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law.  *See* Fed.R.Civ.P. 56(c); *Catawba*

*Indian Tribe of S.C. v. South Carolina*, 978 F.2d 1334, 1339 (4th Cir. 1992), *cert. denied*, 507 U.S. 972 (1993).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion. *See United States v. Diebold*, 369 U.S. 654, 655 (1962); *Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592, 595 (4th Cir. 1985). A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 323. Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence in order to show the existence of a genuine issue for trial. *See Anderson*, 477 U.S. at 256; *Celotex Corp.*, 477 U.S. at 324. However, "[a] mere scintilla of evidence in support of the nonmovant's position will not defeat a motion for summary judgment." *Detrick v. Panalpina, Inc.*, 108 F.3d 529, 536 (4th Cir.), *cert. denied*, 522 U.S. 810 (1997). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

## III.  Proper Defendant

The caption of Plaintiff's complaint identifies the Defendant in this action as "PHI Pepco Power Delivery."  (Paper 1, at 1). Defendants argue that the proper Defendant against whom Plaintiff could claim employment discrimination and retaliation is Pepco, which acknowledges that it was his employer.  PHI has submitted the declaration of Jill D. Flack, PHI's Associate General Counsel, who explained that PHI had no involvement in Pepco's decision to terminate Plaintiff's employment:

> I am responsible for providing legal advice to the corporation [PHI] in a variety of matters. As a result of my duties, I am familiar with the events surrounding the termination of Plaintiff Christopher Baysmore.
>
> Pepco is a wholly-owned subsidiary of PHI.
>
> Christopher Baysmore was employed by Pepco, not by PHI.
>
> PHI has no involvement in Pepco's day to day operations, and PHI does not control Pepco's labor relations.  All of Pepco's hiring and firing decisions are made by Pepco.

(Paper 18, Ex. 13, Flack Aff., at 1 ¶¶ 2-5).  Plaintiff has forecast no evidence showing that PHI played any role in his discharge or contradicting the facts asserted in Ms. Flack's affidavit.  Accordingly, summary judgment in favor of PHI is appropriate as to both of Plaintiff's claims.

## IV.  Discriminatory Discharge

Plaintiff claims that he was discharged from Pepco because of his race.   There are two methods for proving intentional discrimination in employment: (1) through direct or indirect evidence of intentional discrimination, or (2) through circumstantial evidence under the three-step, burden-shifting scheme set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973).   For the first method, an employee may utilize "ordinary principles of proof using any direct or indirect evidence relevant to and sufficiently probative of the issue."  *Rhoads v. Fed. Deposit Ins. Co.*, 257 F.3d 373, 391 (4th Cir. 2001) (internal quotation omitted), *cert. denied*, 535 U.S. 933 (2002).   To overcome a summary judgment motion based upon this method of proof, the plaintiff "must produce direct evidence of a stated purpose to discriminate and/or [indirect] evidence of sufficient probative force to reflect a genuine issue of material fact."  *Id.* (internal quotation omitted).  More specifically, the plaintiff must provide "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision."  *Id.* at 391-92 (internal quotation omitted).  If such evidence is lacking, the plaintiff nevertheless may proceed under *McDonnell Douglas*.   *See Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002).

Under the *McDonnell Douglas* framework, the plaintiff first must establish a *prima facie* case of discrimination. *See McDonnell Douglas Corp.*, 411 U.S. at 802. Once a plaintiff establishes a *prima facie* case of discrimination, the burden of production shifts to the defendant to present a legitimate, nondiscriminatory reason for the adverse employment action alleged. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142 (2000) (citing *Tx. Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). If the defendant succeeds in doing so, that will rebut the presumption of discrimination raised by the plaintiff's *prima facie* case. *See Stokes v. Westinghouse Savannah River Co.*, 206 F.3d 420, 429 (4th Cir. 2000) (citing *Burdine*, 450 U.S. at 255 n.10). The plaintiff then must "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Burdine*, 450 U.S. at 253. In the end, "[t]he plaintiff always bears the ultimate burden of proving that the employer intentionally discriminated against her." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 959 (4th Cir. 1996) (citing *Burdine*, 450 U.S. at 253).

Plaintiff has not introduced any direct evidence of discrimination connected to the termination of his employment. Plaintiff submitted a letter from Helen Arechiga, a former Pepco employee, describing in general terms racial issues that arose between co-workers at Pepco.

10

> I defiantly could see racial issues between
> co-workers at Pepco. Racial comments where
> always tossed around, but camouflaged in a
> joking matter. Minorities in general at
> Substation operators department where treated
> different. Example, a white co-worker found
> guilty for falsifying a company document. He
> would get a slap on the wrist, with a warning.
> If a black co-worker was accused of the same,
> he was fired. Every employee in my time at
> Pepeco that was fired was black. Every
> employee caught for any violation, whom was
> white was written up , or given a warning.

(Paper 20, Ex. 7 (original spelling and grammar retained)). An
atmosphere of discrimination alone, especially when alleged only in
general terms, does not, without more, support an inference that
Plaintiff's termination was based on his race. Ms. Arechiga's
letter provides no evidence of a connection between any atmosphere
of racial tension and Pepco's decision to terminate Plaintiff's
employment, and no other evidence forecast by Plaintiff connects
any racial bias to Plaintiff's termination. Accordingly, Plaintiff
cannot withstand summary judgment based on direct proof of
discrimination, *Rhoads*, 257 F.3d at 391-92, and he must proceed
under the *McDonnell Douglas* framework.

Plaintiff bears the initial burden of establishing a *prima
facie* case of discriminatory discharge under *McDonnell Douglas*. As
the United States Court of Appeals for the Fourth Circuit has
explained,

> [t]o establish a prima facie case of racial
> discrimination in the enforcement of employee
> disciplinary measures under Title VII, [a
> plaintiff] must show that: (1) he is a member

of a protected class; (2) he was qualified for
his job and his job performance was
satisfactory; (3) he was fired; and (4) other
employees who are not members of the protected
class were retained under apparently similar
circumstances.

*Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 133 (4th Cir. 2002)

(footnote omitted) (citing *Hughes v. Bedsole*, 48 F.3d 1376, 1384

(4th Cir. 1995); *Cook v. CSX Transp. Corp.*, 988 F.2d 507, 511 (4th

Cir. 1993)). Pepco acknowledges that Plaintiff is a member of a

protected class and that he was fired from his position, but argues

that Plaintiff cannot show that his job performance was

satisfactory or that other employees outside his protected class

were retained under similar circumstances.  Pepco has submitted

evidence that tends to show that Plaintiff's employment was

terminated because Mr. Joseph believed that Plaintiff had violated

Pepco's employee safety policies on September 1, 2004, had lied to

his supervisor about his violation, and had also submitted false

and misleading time records for September 17 and September 23,

2004.  (Paper 18, Ex. 6).

Plaintiff has forecast some evidence regarding allegations of

misconduct against other Pepco employees who were not terminated,

but much of this evidence is not admissible.  The admissible

evidence Plaintiff forecasts is not sufficient to establish the

fourth element of a *prima facie* case of discriminatory discharge.

Even viewed in the light most favorable to Plaintiff, no admissible

evidence establishes that Pepco failed to terminate any employee

outside Plaintiff's protected class after Pepco concluded he or she had been involved in a similar series of policy infractions or that Pepco believed another employees's explanation of a safety violation under similar circumstances.

Plaintiff points to Mr. Smith and Mr. Wallace, who were unquestionably subject to the same safety violation allegations with regard to Mr. Taylor's September 1, 2004 safety inspection at the number 211 substation, as evidence that he was treated more harshly than persons outside his protected class. Neither of these employees were fired. Mr. Smith was placed on "Decision Making Leave," the most serious sanction Pepco imposes short of termination, and was informed that he would be terminated if he had any further performance problems over the next eighteen months. (Paper 18, Ex. 7). Mr. Wallace was given a "written reminder" reprimanding him for the safety violation and reminding him to follow Pepco's policies, especially safety policies, in the future. (Paper 18, Ex. 8).

Plaintiff has forecast no evidence establishing that either Mr. Smith or Mr. Wallace is outside his protected class, as necessary to establish a *prima facie* case of discriminatory discipline. Indeed, Plaintiff acknowledged that Mr. Smith is black. (Paper 18, Ex. 1, Baysmore Dep., at 173). In addition, Plaintiff has offered no specific evidence to suggest that Pepco suspected either Mr. Smith or Mr. Wallace of submitting false time

sheets or lying about the nature of the safety policy violation on September 1, 2004. Pepco has submitted documents explaining the discipline imposed to Mr. Smith and Mr. Wallace, and the only allegation in these documents is the failure to wear safety equipment properly. (Paper 18, Exs. 7 & 8).

Plaintiff has stated that many of his co-workers submitted false time records, and that one individual had been caught both violating Pepco's personal protective equipment safety policy and submitting false time records. Plaintiff has not come forward with any basis for his personal knowledge of these incidents other than hearsay. As such, these allegations are not admissible evidence through which Plaintiff can establish a *prima facie* case of discrimination in order to withstand summary judgment.

During his deposition, Plaintiff suggested that every member of his department had submitted false time sheets. (Paper 18, Ex. 1, Baysmore Dep., at 174). He went on to specify that three Pepco employees, who he identified as Mr. Ellington, Mr. Fields, and Mr. Ramberg, had submitted false time sheets but were not terminated. (*Id.* at 176-77). When Plaintiff was asked to explain the basis for these allegations, however, he admitted that they were not based on his personal knowledge, but instead were obtained through hearsay. Plaintiff was asked how he knew that everyone in his department had submitted false time sheets. He testified: "[Answer] Because it's proven. [Question] How do you know it? [Answer] How do I know?

14

What people tell you, you know, what you hear.  [Question] Have you ever seen all the time sheets?  [Answer:] I've seen some of them." (*Id.* at 174).  Plaintiff went on to clarify that he had not seen any of the allegedly false time records submitted by Mr. Ellington, Mr. Fields, or Mr. Ramberg.  (*Id.* at 179, 181).  Plaintiff also testified that his only knowledge of Mr. Ellington's time record problems was what he had heard from "Mr. Coleman, the union hall." (*Id.* at 179).  Because Plaintiff has not established any basis for his personal knowledge as to these allegations, and because the allegations appear to be based on hearsay, this testimony is not admissible and cannot support a *prima facie* case of discriminatory discharge.

In the discipline questionnaire that Plaintiff submitted to the EEOC prior to formally filing his charge of discrimination, he stated that three Caucasian Pepco employees had been disciplined less severely for problems associated with time records.  He asserted that "Mr. Ellington" had experienced a "timesheet incident" and had received unknown discipline short of termination. (Paper 20, Ex. 14, at 5-6).  Plaintiff also alleged that "Mr. Barcome" had used training time on his time record, while Plaintiff had not been allowed to use training time as an entry on his time record.  (*Id.* at 8).  As discussed above, however, Plaintiff acknowledged during his deposition that he had no personal knowledge of Mr. Ellington's time sheets.  (Paper 18, Ex. 1,

Baysmore Dep., at 179).  Plaintiff presents no basis at all for his knowledge that Mr. Barcome was allowed to include training time on his time reports, and this allegation is therefore inadmissible. Moreover, including training time in a time record is much different than the series of violations that Pepco asserts were the basis of its decision to fire Plaintiff.  Thus, even if Plaintiff could prove this allegation, it would not be sufficient to show that Mr. Barcome was "retained under apparently similar circumstances." *Bryant*, 288 F.3d at 133.

Plaintiff also stated in the Discipline Questionnaire that a third Caucasian employee, Mr. Locantore, had a problem with his time sheet for May 21, 2004.  (Paper 20, Ex. 14, at 8).  As a supplement to his brief in opposition to the motion for summary judgment, Plaintiff submitted a series of exhibits, including one page from the "Substation Activities Log Book" for substation number 75.  (Paper 23, Ex. 4).  This document includes an entry on May 21, 2004, indicating that Mr. Locantore signed into the substation for a period of 45 minutes.  (*Id.*).  Plaintiff asserts that Mr. Locantore claimed that he had spent 7.5 hours on the same task in his time report (paper 23, at 1), but he does not describe the basis of his personal knowledge of the contents of Mr. Locantore's time records and has not submitted those records. Plaintiff also argued in his brief in opposition to the motion for summary judgment that Mr. Taylor "witnessed . . . Mr. Ellington and

16

Mr. Locantore, not wearing protective hats, glasses, or overalls while in the Sligo Substation #9 in 2004.   Taylor did not discipline these Caucasian employees although they were in clear violation of the safety policy." (Paper 20, at 2).  Plaintiff has again failed to establish any basis, apart from hearsay, for his knowledge of the safety violation or of the fact that Mr. Taylor witnessed any violation.  Plaintiff had the opportunity to depose witnesses and submit interrogatories and document requests during discovery to obtain evidence to substantiate his allegations, but he has presented no admissible evidence to support these statements.

Finally, Ms. Arechiga's statement, in the letter submitted by Plaintiff, that white Pepco employees were generally disciplined less severely than black employees is insufficient to establish a *prima facie* case of discriminatory discipline with respect to Pepco's decision to terminate Plaintiff's employment.  Ms. Arechiga mentions that a hypothetical white employee would have received a "slap on the wrist" for submitting false time records, but she does not identify any specific instance where specific employees of different races were treated differently for similar conduct.  She does not offer any factual details about the discipline imposed on any employee.  Her general accusations of disparate discipline reflect only Ms. Arechiga's subjective belief that race was involved, which is insufficient to establish the fourth element of

17

Plaintiff's *prima facie* case for discriminatory discharge on a motion for summary judgment. *See Bryant*, 288 F.3d at 135 (citing *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 62 (4th Cir. 1995).

None of the admissible evidence forecast by Plaintiff is adequate to establish that any Pepco employee outside Plaintiff's protected class was subject to less-severe discipline for a similar offense.  Plaintiff has therefore failed to establish a necessary element of a *prima facie* case of discriminatory discharge.

Alternatively, Pepco's evidence establishes three non-discriminatory reasons that Pepco was considering terminating Plaintiff's employment: its conclusions that he violated Pepco's personal protective equipment safety policies on September 1, 2004, was dishonest when discussing the incident with his supervisor, and submitted false time records on September 17 and September 23, 2004.  (Paper 18, Ex. 6).  Although the memo submitted does not explicitly indicate that Plaintiff was terminated for these reasons, it explains that termination appeared to be appropriate based on these offenses, and Plaintiff was in fact terminated after the additional meeting contemplated by the memo.  Accordingly, this memo is evidence that Plaintiff was terminated for the reasons specified, and it satisfies Pepco's burden to come forward with evidence of a nondiscriminatory rationale for Plaintiff's

termination even if Plaintiff presented an adequate *prima facie* case of discriminatory discharge.

For the same reasons outlined above, Plaintiff presents insufficient evidence to create a material dispute of fact relevant to whether these reasons were pretextual. Plaintiff's allegations that he did not violate Pepco's safety policies and thus was not dishonest with Mr. Taylor do not support any inference that Pepco chose not to accept Plaintiff's explanation for racially discriminatory reasons. Plaintiff has forecast no evidence to suggest that similar explanations were accepted from employees outside his protected class while his explanation was rejected. There is therefore no support for a conclusion that Pepco's asserted rationale for firing Plaintiff was false, as opposed to mistaken. Even if Plaintiff's factual assertions about the safety inspection are true, they at best would only demonstrate that Pepco's asserted rationale for his termination was a mistake, not a pretext for discrimination. *See Wang v. Metro. Life Ins. Co.*, 334 F.Supp.2d 853, 870 (D.Md. 2004) (citing *Price v. Thompson*, 380 F.3d 209, 216-17 (4th Cir. 2004)). Plaintiff's and Ms. Arechiga's conclusory assertions that race was involved in his termination are also insufficient to demonstrate pretext. *See Kess v. Mun. Employees Credit Union of Balt., Inc.*, 319 F.Supp.2d 637, 648 (D.Md. 2004) (citing *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 960 (4th Cir. 1996)).

## V.  Retaliatory Discharge

Plaintiff also alleges that Pepco violated Title VII because it terminated his employment in retaliation for an internal race discrimination complaint that he filed sometime between November 2003 and February 2004.[3]

A retaliation claim under Title VII can be proven indirectly through the same burden-shifting framework described above for Title VII discrimination claims, and because Plaintiff has come forward with no direct evidence, beyond his own belief, of any retaliatory motive by Pepco or any of his supervisors, Plaintiff must proceed under this framework.

> In assessing [Plaintiff's] retaliation claim[], we are obliged to begin with the language of the relevant statutory provisions. In pertinent part, section 704(a) of Title VII prohibits an employer from taking an adverse employment action against any employee "because he has opposed any practice made an unlawful employment practice under this subchapter." Title VII § 704(a), 42 U.S.C. § 2000e-3(a). Under the [*McDonnell Douglas*] burden-shifting framework . . . a plaintiff bears the initial burden of establishing a prima facie case of retaliation. *See Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 258 (4th Cir. 1998) (citing *McDonnell Douglas*, 411 U.S. at 802-04, 93 S.Ct. 1817). Once this burden is carried, the burden shifts to the defendant, who is obliged to articulate a legitimate, non-retaliatory justification for

---

[3] Plaintiff has stated that this complaint occurred as early as November 2003 (*see* paper 20, Ex. 10, at 1), although the written complaint Plaintiff submitted is dated February 12, 2004. (Paper 20, Ex. 9, at 2). The difference between these dates is not material to the outcome of Pepco's motion for summary judgment.

> the adverse employment action. *See id*. If
> the defendant carries this burden, the onus is
> on the plaintiff to then demonstrate that the
> non-retaliatory reason advanced by the
> defendant is a mere pretext. *See id.; see also
> Reeves v. Sanderson Plumbing Prods., Inc.*, 530
> U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105
> (2000).

*Equal Employment Opportunity Comm'n v. Navy Fed. Credit Union*, 424
F.3d 397, 405 (4th Cir. 2005). "In order to establish a prima facie
case of retaliation, a plaintiff must prove three elements: (1)
that []he engaged in a protected activity; (2) that h[is] employer
took an adverse employment action against h[im]; and (3) that there
was a causal link between the two events." *Id.* at 405-06. With
respect to the third element, "the employer must have taken the
adverse employment action *because* the plaintiff engaged in a
protected activity." *Dowe v. Total Action Against Poverty in
Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998). Thus, the
employer must know about the protected activity. *Id.* "[A] causal
connection for purposes of demonstrating a prima facie case exists
where the employer takes adverse employment action against an
employee shortly after learning of the protected activity." *Price*,
380 F.3d at 213 (citing *Williams v. Cerberonics, Inc.*, 871 F.2d
452, 457 (4th Cir. 1989)).

Pepco acknowledges that Plaintiff's internal discrimination
complaint was a protected activity under Title VII, and that
Plaintiff was subject to adverse action when his employment was
terminated on November 5, 2004, but argues that Plaintiff has not

introduced any evidence that tends to establish a causal link between these events.  Plaintiff has not introduced any evidence directly linking these events, or suggesting that Mr. Taylor or any other Pepco employee had a retaliatory intent in terminating his employment.  Plaintiff stated during his deposition that Mr. Taylor seemed to be angry with him on September 23, 2004, when Plaintiff requested and received from him documentation relating to Plaintiff's ongoing training activities.  (Paper 20, Ex. 1, Baysmore Dep., at 170-72).  Plaintiff provides no basis, however, for his allegation that Mr. Taylor's anger was based on Plaintiff's internal discrimination complaint, which had been filed months earlier.

Causation can be inferred if the protected activity and the retaliatory act closely follow one another in time, *Price*, 380 F.3d at 213, but the undisputed timing of events in this case does not support an inference of causation.  In this case, Plaintiff completed his internal complaint, and Pepco became aware of it, at the latest on February 12, 2004 (paper 20, ex. 9), and Pepco had completed its response to Plaintiff's complaint by February 16, 2004.  (Paper 20, Ex. 10).  Plaintiff's safety violation occurred more than six months later on September 1, 2004, and the decision to terminate Plaintiff's employment occurred approximately two months after that.  As the Fourth Circuit recently observed, in the absence of other evidence, such a delay is too long to give rise to

22

any inference of causation necessary to establish a *prima facie* case of retaliation.

> Generally speaking . . . the passage of time alone cannot provide proof of causation unless the "temporal proximity between an employer's knowledge of protected activity and an adverse employment action" was "very close." . . . In this case, at least three to four months separated the termination of Pascual's employment and the claimed protected activities. We find that this time period is too long to establish a causal connection by temporal proximity alone.

*Pascual v. Lowe's Home Ctrs., Inc.*, 193 Fed.App'x 229, 233-34 (4th Cir. 2006) (citing *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273,(2001) (per curiam); *see also Rose v. Son's Quality Food Co.*, No. 04-3422, 2006 WL 173690, at *5 (D.Md. Jan. 25, 2006) ("The six-month period that lapsed between plaintiff's exercise of her protected rights and the adverse employment action renders an inference of causality tenuous to the point of evaporation.") Likewise, the period of at least six months between Plaintiff's internal discrimination complaint and the decision to terminate his employment is too long, in the absence of other evidence linking the two events, to give rise to any inference of causation.

Furthermore, even if Plaintiff had made an adequate *prima facie* showing of retaliation, as discussed above with respect to discrimination, Pepco has come forward with a legitimate rationale for Plaintiff's termination, based on its conclusion that he violated safety policies, was dishonest in discussing his violation

23

of those policies, and had submitted false time records.  Plaintiff has produced no evidence, beyond his own unsubstantiated and conclusory allegations of retaliation, to prove that this proffered rationale is pretextual.  Accordingly, summary judgment will be granted in Pepco's favor.

## VI.  Retaliatory or Discriminatory Delay of Training Signoffs

Plaintiff argues in his opposition to Pepco's motion for summary judgment that he was retaliated against prior to his termination when he was "mistreated" by Mr. Taylor, and makes what appears to be a reference to a dispute about the speed at which his supervisors processed training documents Plaintiff needed to be eligible for further promotion at Pepco.  (Paper 20, at 2). Plaintiff complained on several occasions that Mr. Taylor and other supervisors were not completing these forms, referred to as signoffs, within what Plaintiff contends was a ten-day window imposed by Pepco policy.  (Paper 18, Ex. 1, at 169-70; paper 20, Ex. 2).  Plaintiff now appears to assert that delays in processing these forms were part of a pattern of retaliatory conduct by Mr. Taylor.  (Paper 20, at 2).  Plaintiff also asserted during his deposition that Mr. Taylor's delays in processing his signoffs were based on a discriminatory motive, although he offered no basis, other than his own belief, to substantiate this alleged motive. (Paper 20, Ex. 1, Baysmore Dep., at 162-63).  Plaintiff cannot properly claim retaliation or discrimination based on this conduct,

24

as Pepco points out (paper 18, at 8 n.4), because he has not
exhausted his administrative remedies with respect to these
allegations.

An individual cannot bring a private action under Title VII
without first exhausting the administrative enforcement process
available through the EEOC. *Chacko v. Patuxent Inst.*, 429 F.3d.
505, 508-09 (4th Cir. 2005) (citing 42 U.S.C. § 2000e-5(b), (f)(1)).
Administrative exhaustion requires at least that the plaintiff
"file an administrative charge with the EEOC within a certain time
of the alleged unlawful act." *Id.* at 508. "[T]he factual
allegations made in formal litigation must correspond to those set
forth in the administrative charge." *Id.* at 509. Furthermore,
"the allegation of a discrete act or acts in an administrative
charge is insufficient when the plaintiff subsequently alleges a
broader pattern of misconduct." *Chacko*, 429 F.3d at 505 (citing
*Dennis v. County of Fairfax*, 55 F.3d 151, 153, 156-57 (4th Cir.
1995)).

Plaintiff's charge of discrimination, filed with the EEOC,
complains only of conduct on November 11, 2004, the date
Plaintiff's employment was terminated. (Paper 18, Ex. 11, at 5).
The charge of discrimination alleges only discriminatory and
retaliatory discharge, a discrete act, and does not allege that any
pattern of discrimination preceded Plaintiff's discharge.

25

Accordingly, Plaintiff cannot claim a pattern of retaliation or discrimination before this court.  *See Chacko*, 429 F.3d at 505.

In the discipline questionnaire Plaintiff submitted to the EEOC, he alleged that processing of his signoff requests had been delayed.  (Paper 20, Ex. 14, at 8).  These allegations were not sufficient to exhaust the issue before the EEOC because they were not made under oath.  Pursuant to 42 U.S.C. § 2000e-5(b), a charge of discrimination before the EEOC must be made "in writing under oath or affirmation."  Additional allegations made in a signed writing, such as an EEOC questionnaire, but not verified under oath, are not part of a charge of discrimination later raised before the EEOC, and thus cannot be used to broaden the scope of subsequent litigation.  *C.f. Edelman v. Lynchburg Coll.*, 300 F.3d 400, 406 (4th Cir. 2002).  Plaintiff's discipline questionnaire was not signed under oath (paper 20, Ex. 14), and Plaintiff did not repeat any allegation about delayed signoff requests in his charge of discrimination (paper 20, Ex. 11, at 5).  Therefore, Plaintiff's allegation about delays in processing his signoffs in the Discipline Questionnaire are not sufficient to exhaust his administrative remedies with respect to these allegations.  Summary judgment in favor of Pepco will be granted with respect to these allegations.

**VII.  Conclusion**

For the foregoing reasons, Defendants' motion for summary judgment will be granted and judgment will be entered in favor of PHI and Pepco.  A separate Order will follow.


_____/s/_____
DEBORAH K. CHASANOW
United States District Judge